Bigger, J.-
Heard on motion of defendant- to direct a verdict at the conclusion of plaintiff’s case.
The question here presented upon this motion to direct a verdict for the defendant is one which was not and could- not be fairly raised and decided upon the demurrer to the petition, because the facts as-now disclosed by the evidence were not fully •pleaded in the amended petition. Had they been fully pleaded the question now presented could have been raised .and decided upon the demurrer. I am satisfied that the decision upon the demurrer was correct, and that the amended petition states -a good cause- -of action against the defendant. Examination of the issues involved in such an action as this upon the former submission of the question of the right of the defendant to amend its answer satisfied me that if the proof corresponded to the allegations of the petition the plaintiff would have a right of recovery.
The amended petition states that George W. Ayers in going to and from his work was required to pass to and fro over the tracks and right-of-way of said company, and that upon the occasion in question at the hour of quitting work and while he was *287 on the right-of-way of said company, as it was necessary for him to be in going from his employment, he was run over by a train of cars operating upon the tracks of said company. The proof offered by the plaintiff now discloses the fact to be that, as George W. Ayers was going to his home on the day in question, he boarded a passing freight train and that he fell therefrom and thus sustained the injuries which are complained of in the petition.
The principal contention, as I understand from the argument of defendant’s counsel, is that this was not a direct or proximate result of the tort complained of and for that reason there can be no recovery.
As I said in deciding the defendant’s application for leave to amend its answer, this is not a negligence case. The action does however sound in tort. Being an action in tort a correct determination of the question presented must necessarily depend upon a correct understanding of the nature and extent of the defendant’s liability in such a case as this. It will be observed that the gist of this case, as pleaded, is the employment of the minor son of plaintiff with knowledge of the minority and without the consent of his mother and against her protest, coupled with the further averments necessary to show that his employment was in a'hazardous business and that as a consequence of the hazards of the business he was injured.
Labatt states the rule, and I think carefully and concisely states it, in this language:
“The controlling principle then is that a person who hires an unemancipated minor and puts him at hazardous work is accountable to the non-assenting parent for all the consequences flowing directly from the employment-in so far as they entail a loss of the minor’s services by the parent.”
The case made by the amended petition is not one for merely enticing away the servant of the plaintiff. The plaintiff in this-case could not recover the damages she seeks merely upon proof that her son was employed without her consent and with knowledge on the part of the defendant that his services were due to her. What she seeks is damages for the injury he sustained *288 while in the employment of the defendant, and she avers-by said injuries received by her said son she has been and will be deprived of the value of his services from-the time of said accident until her said son is twenty-one years of age. •
To establish the defendant’s.liability it is necessary therefore to prove not only that he was employed without the- plaintiff’s consent and with knowledge that he owed service to the plaintiff, but also to show by the evidence that the injuries were such as flowed directly from the employment, using-the language of Labatt. • • ■ ' • ■
It is manifest and was conceded by-plaintiff’s Qounsel. that it is not for every injury which a minor may suffer during the term of his employment that a parent can recover.. ' Neither can it be maintained that for every injury suffered at the place of his employment will the employer be liable. ’It is admitted that had he been traveling along one of the publie streets of the city on the way to his home and had met with some accident, as for instance had been run down, by an automobile; the defendant could not be liable. That the determining factor can not mean merely the place where he was injured seems' nearly as clear as that the time of the injury ©an not be the determining factor.
Suppose that as he was-on his way home upon the right-of-way he had become involved in a quarrel with his fellow workman and had assaulted one of them and in the fight had been injured, it would certainly not be contended that the defendant would 'be liable in damages for such an injury merely because it occurred upon the defendant’s right-of-way as the minor was going home.
Clearly, therefore, there must have, been some limits to the liability of the employer under such circumstances, and the question is what is -the extent and scope of this liability and the rule for its determination. And this must be determined in order to arrive at a correct solution of the problem.
The action as I have said is one sounding in tort. When we come to consider the question of the liability of a tort feasor for his wrongful -act there are some well established rules which are applicable generally to all ’ cases- of tort, and indeed are not confined to cases of tort merely but apply, also to actions for breach of contract. The fundamental underlying principle is *289 this: a person is responsible for the natural consequences of his own volutary acts. When he commits a tortious act he is liable for the natural and probable consequences of his own act. This makes him liable not only for those consequences which are caused directly and immediately by his wrongful act, but also for those which according to the ordinary experience of mankind usually follow or are liable to result from the wrong act. Men are presumed in law to intend those consequences which naturally follow upon an unlawful or wrongful act, and therefore it is that they are held liable in damages for such consequences. But it is equally well established, I think, that in a case of breach of contract and tort men are not liable for those consequences which are only remote and not proximate or natural and probable. The liability is not limited either, strictly speaking, to consequences which are proximate. But although not immediate, using that term as synonomous with proximate, yet if they are the natural and probable result, the wrong-doer will be liable as in the squib case.
While this case is not a negligence case, yet these principles apply as well to negligence cases as any other class of wrongdoers, and also apply to cases of breach of contract, for as I have said the rule grows out of .the fundamental principle stated that men are presumed to intend the natural and probable consequences of their intentional acts. The wrongful act complained of is the employment of the minor without his mother’s consent, the defendant having knowledge of the fact that he was a minor and that he had a mother to whom the services were due. For that wrongful act the defendant was liable for the natural and probable consequences of its own voluntary wrongful act in employing him. It employed him in a business which, as is well known, is attended with perils from the operation of trains upon the road. There may be other perils attendant upon the execution of their particular work not connected with the operation of trains.
The great danger undoubtedly to section men in the running of trains upon the tracks upon which they are at work is that there is a liability of being struck and killed or injured by a passing train, which every man well knows.
*290 Of course if one should undertake to board a fast'moving train upon the road, he would be liable to injury. The law of this state makes it a crime to board an engine or railroad car. Can it be said that men who' work upon the tracks of a railroad are any more liable to violate the criminal laws of the state by boarding a running train on the road than are other men who are not employed on the road ? There is certainly no natural probability that men whether in or out of the employment of the railroad' are' going to violate the laws of the state by boarding moving trains. It is doubtless true that men do violate this law, but that it is more likely to be violated by section men on the road than by tramps and others who frequently steal rides upon the trains' in violation of the law, can not it seems to me be maintained with any reason. It is a well known fact that section men are provided with a hand car upon which they transport themselves and their tools to and from their place of work. And they were in this case. And they have no more right so far as the evidence shows to jump upon passing trains than has any other person. There certainly is and can be no probability or presumption in the nature of things that section men will be found'violating the criminal laws of the state, and thus subjecting themselves to the peril which does not and could" not exist for them if they were law abiding citizens more than any other class of men.
When the defendant employed this young man it was bound to- anticipate that he might be run over when engaged at his work, and the defendant could not exonerate itself by showing that he was guilty of negligence. The plaintiff would not be responsible for that negligence, and his negligence could not be attributable to her. And furthermore it is a well known fact that men are killed upon railway tracks almost daily simply because they are negligent. That is a danger which grows out of or flows directly- from the employment, because he was compelled to work upon the tracks where this danger was ever present. And the defendant was bound to anticipate it as likely to occur. But the defendant is not liable for dangers and risks which-are not natural or probable. And certainly it could not be said to be one of the natural and probable risks of such em *291 ployment that an employe would violate the criminal laws of the state and thus incur additional risk of injury.
Damages in tort cases, and this ease is simply a tort case, are limited and must be limited to those consequences which are the natural, proximate and probable consequences of the wrong complained of. This is a universal rule and this ease can not be any exception to the rule.
The petition in this case states a good cause of action. I have no doubt that if the proof had shown that as this young man was leaving his work, and traveling along where his work would naturally require him to go, and was run down by a train as alleged in the petition, that the defendant would be liable. But it seems clear to me that this injury was not proximately the natural and probable consequence of the employment. It could not reasonably have been contemplated as one of the risks incident to the employment. If it could not then the defendant can not be held liable under the rule.
This young man was not employed to work upon the trains running over the road. He was employed to work only upon the tracks of the road. If he had been employed to work upon the trains then the danger of getting on and off would be one of the risks incident to his employment, and injury from such source one of the natural and probable consequences of that employment. But not being employed for that purpose the injury from such a cause was no more to be anticipated as a result and probable consequence of his employment than that he would be injured as a consequence of his becoming involved in a quarrel with his fellow workmen. It would be no more natural to expect him to be injured in violating the criminal law in one direction than in another, and for such remote and improbable consequences under the rule which is universal in its application an employer can not be held liable in damages. The risk of injury from jumping upon running trains is one to which he would be exposed equally in any other occupation and indeed it is a matter of common knowledge that this offense is usually committed by men who have no'occupation.
No ease has been cited exactly in point upon this question but the general principle is so well established by judicial decision *292 that it seems to me it admits of no doubt as to the proper application of it in this case. When this question was first presented to my mind by the opening statement of counsel to the jury, this conclusion was my first impression. And after the careful argument of counsel on both sides I feel so clear upon the subject that I deem it my duty to arrest the case at this point.